IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RODNEY KIBBLE, on behalf of himself and all others similarly situated<br>   *Plaintiff,* | §<br>§<br>§<br>§ | |
| V. | § | CIVIL ACTION NO. H-05-3376 |
| | § | |
| TOMMY THOMAS, in His Official Capacity as SHERIFF OF HARRIS COUNTY, TEXAS HARRIS COUNTY, TEXAS and TODD COLSON,<br>   *Defendants.* | §<br>§<br>§<br>§<br>§ | |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MOTION TO STRIKE PLAINTIFF'S PURPORTED *DAUBERT* MOTION**

Defendants Tommy Thomas in His Official Capacity as Sheriff of Harris County, Texas ("Sheriff Thomas") and Harris County, Texas (collectively "Defendants") now file their Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment ("the Response") and Motion to Strike, or in the Alternative, Response to Plaintiff's purported Daubert Motion, and would respectfully show this Court as follows:

**FACTUAL AND PROCEDURAL BACKGROUND**

1.  This Motion is before the Court solely on the issue of Harris County's liability.[1] Harris County has conceded that the force used against Plaintiff Rodney Kibble ("Plaintiff") by former deputy Todd Colson ("Colson") on October 4, 2003 was excessive. At issue is Harris

---

[1]  In its Motion for Summary Judgment, Defendants established that a suit against Sheriff Thomas in his Official Capacity and a suit against Harris County are the same thing. *See* Kentucky v. Graham, 473 U.S. 159 (1985); Woodward v. Andrus, 419 F. 3d 348, 352 (5th Cir. 2005)(*citing* Monell v. New York City Dep't of Soc. Serv., 436 U.S. 658, 690 n. 55 (1978)). Plaintiff has completely failed to respond to this argument. Plaintiff's claim against Sheriff Thomas in his Official Capacity is redundant of his claim against Harris County and should be dismissed as a matter of law.

County's liability for Colson's acts and conduct at that time. Harris County denies that it is liable to Plaintiff in any amount, under any theory.

2. On January 27, 2006, this Court entered its Scheduling Order. *See* DKT. NO. 9. By the terms of the Scheduling Order, all other motions, including <u>Daubert</u> motions, were to be filed on March 16, 2007. *See* DKT. NO. 9. On January 4, 2007, this Court entered its Order extending the time in which dispositive motions were to be filed, up to and including March 30, 2007. *See* DKT. NO. 13. This Order, however, did not extend the time for the filing of <u>Daubert</u> motions. Plaintiff's <u>Daubert</u> motion, filed on April 30, 2007, is untimely.

3. This case is set for docket call on June 22, 2007.

### ARGUMENT AND AUTHORITIES

4. In his Original Complaint, Plaintiff asserted one claim against Defendants. That claim was found in Plaintiff's Third Claim for Relief, Violation of Constitutional Rights by Defendants Tommie [sic] Thomas in his Official Capacity as Sheriff of Harris County, Texas and Harris County, Texas. Plaintiff pled as follows:

> "43. The exercise of these established policies and/or customs by Defendants Tommie [sic] Thomas in his Official Capacity as Sheriff of Harris County, Texas and Harris County, Texas violated Plaintiff's clearly established rights under the United States Constitution to freedom from the use of unreasonable, excessive, and unnecessary force." *See* DKT. NO. 1, pages 8-9.

There can be no doubt that Harris County is entitled to judgment on Plaintiff's claim that Harris County had a custom, policy or procedure permitting the use of excessive force. The summary judgment evidence conclusively establishes that Harris County has no such policy, and Plaintiff has completely failed to offer any evidence which creates a genuine issue of material fact with regard to this claim.

5.      Plaintiff does not plead in his Complaint that Harris County had a custom of unsupervised cell searches.  Similarly, Plaintiff does not plead that Harris County's alleged custom of unsupervised cell searches was the moving force of the use of excessive force on him by Colson on October 4, 2003, as Section 1983 requires.

6.      In his Response, Plaintiff alleges for the first time that Harris County's jail personnel generally adhere to a practice that a supervisor need not be present for non-supervisory personnel to conduct a cell search for contraband.  He continues that the "…County's practice of allowing cell searches without a supervisor being present is a 'policy or custom' so common and well settled as to constitute a custom that represents official policy."  *See* Plaintiff's Response to Defendant's Motion for Summary Judgment, DKT. NO. 17, page 1.  The Court should dismiss this claim, as it was not pled in the Complaint.

7.      Even if the Court does not dismiss this claim, Harris County is entitled to judgment as a matter of law for three reasons.  First, Plaintiff cannot claim that he has a constitutional right to a supervised cell search, as no such constitutional right exists.  Second, even if the Court assumes that Plaintiff has established a genuine issue of material fact as to whether a custom of unsupervised cell searches exists in the Harris County Jail, he has not established the direct causal link between the alleged custom and the alleged constitutional deprivation which Section 1983 requires.  Finally, Plaintiff has completely failed to establish that a final Harris County policymaker had actual or constructive knowledge of this allegedly persistent and widespread custom.  There is no genuine issue of material fact, and Defendants are entitled to judgment as a matter of law.

8.      Defendants are entitled to judgment as a matter of law on Plaintiff's claim that Defendants' alleged policy of permitting unsupervised cell searches is unconstitutional. First,

Plaintiff has provided no support for any argument that he has a constitutional right to a supervised cell search. This purported right does not appear in the United States Constitution, and cannot support a Section 1983 action. Defendants can have no liability absent a constitutional violation by one of its officials. *See* City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Saenz v. Heldenfels Bros., Inc., 183 F.3d 389, 392-93 (5th Cir. 1999); Rios v. City of Del Rio, 444 F.3d 413, 426 (5th Cir. 2006).

9. Defendants do not incur liability under Section 1983 unless there exists a "direct causal link" between [the county's] policy or custom and the alleged constitutional violation." *See* James v. Harris County, No. H-04-3576, 2006 WL 2827050 (S.D. Tex. Sept. 28, 2006), at *8 (*quoting* City of Canton, Ohio v. Harris, 489 U.S. 378 (1989). "That a plaintiff has suffered a deprivation of federal rights at the hands of a [government] employee will not alone permit an inference of [county] culpability and causation; the plaintiff will simply have shown that the employee acted culpably." *See* Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 415 (1997). Specifically, "the plaintiff must initially [show] that an official policy or custom was a cause in fact of the deprivation of rights inflicted." *See* James, Id., 2006 WL 2827050 at *8 (*quoting* Spiller v. City of Texas City, 130 F. 3d 162, 167 (5th Cir. 1997). This Court has noted that "This connection must be more than a mere 'but for' coupling between cause and effect." *See* James, Id., 2006 WL 2827050 at *8 (*quoting* Fraire v. City of Arlington, 957 F. 2d 1268, 1278 (5th Cir.), *cert. denied*, 506 U.S. 973 (1992). There is no genuine issue of material fact with regard to the direct causal link required to hold Defendants liable. Defendants are entitled to judgment as a matter of law.

10. Plaintiff's theory that Harris County has a custom of permitting unsupervised cell searches is also without merit because this was an isolated incident. A custom is defined as a

"persistent, widespread practice of [county] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [county] policy." *See* Pineda v. City of Houston, 291 F. 3d 325, 328 (5th Cir. 2002); James, Id., No. H-04-3576, 2006 WL 2827050, 7 (S.D. Tex. Sept. 28, 2006)(*citing* Burge v. St. Tammany Parish, 336 F. 3d 363, 369 (5th Cir. 2003)(*quoting* Bennett v. City of Slidell, 735 F. 2d 861, 862 (5th Cir. 1984)(en banc). This Court has noted that "If actions of [county] employees are to be used to prove a custom for which the [local government entity] is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." James, 2006 WL 2827050 at *7 (*quoting* Webster v. City of Houston, 735 F. 2d 838, 842 (5th Cir. 1984). Consistent with the commonly understood meaning of "custom", proof of random acts or isolated incidents is not sufficient to show the existence of a custom or policy. *See* James, 2006 WL 2827050 at *7, *citing* Fraire, Id.). This Court has also noted that "Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy, as required for municipal Section 1983 liability." *See* James, 2006 WL 2827050 at *7 (*citing* Campbell v. City of San Antonio, 43 F. 3d 973, 977 (5th Cir. 1995).

11.     Plaintiff's "custom" theory is also insufficient because he has failed to create a genuine issue of material fact as to the actual constructive knowledge of a final Harris County policymaker. To prevail under Section 1983, Plaintiff must establish that a final Harris County policymaker had either actual or constructive knowledge of the alleged policy or custom. *See* Piotrowski v. City of Houston, 237 F. 3d 567, 579 (5th Cir. 2001)("Actual or constructive knowledge of a custom must be attributable to the governing body of the municipality or to an

official to whom that body had delegated policy-making authority."); Webster v. City of Houston, 735 F. 2d 838, 842 (5th Cir. 1984). The issue of whether a particular official has 'final policymaking authority' is a question of state law. *See* City of St. Louis v. Praprotnik, 485 U.S. 112, 126 (1988). Only those governmental officials who have "final policymaking authority" may by their actions subject the government to Section 1983 liability. *See* Praprotnik, 485 U.S. at 123 (*quoting* Penbaur, 475 U.S. at 483).

12.   Actual or constructive knowledge of the persistent and widespread custom "must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority." Pineda, 291 F.3d at 328; Piotrowski, 237 F.3d at *579*. In other words, the final policymaker must have either actual or constructive knowledge of the alleged policy or custom. *See* Pickens v. Harris County, F. Supp.2d , No. H-05-2978, 2006 WL *3175079,* *10 (S.D. Tex. Nov. 2, 2006).

13.   Actual knowledge "may be shown by such means as discussions at council meetings or receipt of written information." Constructive knowledge, on the other hand, "may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." Pineda, 291 F.3d at 330 (finding no actual or constructive knowledge) (*quoting* Bennett v. City of Slidell, 728 F.2d 762, 768 (5th Cir. 1984) (en banc)).

14.   Even if Plaintiff had established an unconstitutional custom of unsupervised cell searches on Harris County's part, which Harris County denies, he has not established either actual or constructive knowledge on the part of a final Harris County policymaker. This failure of proof is fatal to his Section 1983 cause of action. Plaintiff has further failed to offer any

evidence sufficient to create a genuine issue of material fact with regard to the required actual or constructive knowledge of a final Harris County policymaker.

15.     To prevail, Plaintiff must also prove that Harris County's decision "reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." James, 2006 WE 2827050 at *8 (quoting Brown, 520 U.S. at 411). As the Supreme Court explained:

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

James, 2006 WE 2827050 at *8 (quoting Brown, 520 U.S. at 404).

16.     "Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights." James, 2006 WL 2827050 at *8 (quoting Brown, 520 U.S. at 415). Thus, plaintiffs seeking to recover against a municipality under § 1983 must first prove a direct causal link between the municipal policy and the constitutional deprivation; they then must establish that the [county] consciously enacted a policy reflecting deliberate indifference to the constitutional rights of its citizens. James, 2006 WL 2827050 at *8 (citing Canton, 489 U.S. at 392).

17.     "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." James, 2006 WE 2827050 at *8 (quoting Brown, 520 U.S. at 410); Davis, 406 F.3d at 381; Pickens, 2006 WE 3175079 at * 10. Where plaintiffs advance a failure to supervise or investigate theory, they must show a causal link between such and must also show that such failures amount to deliberate

indifference. Davis, 406 F.3d *375* (5th Cir. 2005) (training); Pickens, 2006 WL 3175079 at *10 (training).

18.     To act with deliberate indifference, the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. Deliberate indifference requires a showing of more than negligence or even gross negligence. Id. "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." Id. "To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the [supervision or investigation] is 'obvious and obviously likely to result in a constitutional violation." Id. "[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different [supervision or investigation] is so obvious, and the inadequacy so likely to result in the violation of constitutional rights," a supervisor might reasonably be found to be deliberately indifferent." Id.

19.     The pattern of violations must be fairly similar to the constitutional violation at issue such that the failure, if any, of Harris County's final policymaker to respond with better supervision constitutes a deliberate or conscious choice to endanger constitutional rights. Davis, 406 F.3d at 381-83; Roberts, 397 F.3d at 292; Hudspeth v. City of Shreveport, 2006 WL 3747446, * 18 (W.D. La. Dec. Dec. 18, 2006).[2]

---

[2]     Pickens, 2006 WL 3175079 at * 11 (*citing* Cozzo v. Tangipahoa Parish Council, 279 F.3d 273, 288 (5th 5th Cir. 2002); Thompson, 245 F.3d at 459; Snyder, 142 F.3d at 798 ("proof of a single violent incident ordinarily is insufficient" for liability; the "plaintiff must demonstrate 'at least a pattern of similar incidents in which the citizens were injured.'"); Cousin v. Small, 325 F.3d at 637 (5th Cir. 2003) ("[t]o succeed on his claim of failure to train or supervise" the plaintiff must demonstrate deliberate indifference, which usually requires a plaintiff to "demonstrate a pattern of violations"); Burge v. St. Tammany Parish, 336 F.3d 363, 370 (5th Cir. 2003) (proof of deliberate indifference "generally requires a showing 'of more than a single instance of the lack of training or supervision causing a violation of constitutional rights" (*quoting* Thompson, 245 F.3d at 459)). Plaintiff has not demonstrated such a pattern here.

20.     Deliberate indifference requires that the plaintiffs show that the failures with regard to supervision or investigation reflect "a 'deliberate' or 'conscious' choice to endanger constitutional rights." Pickens, 2006 WL *3175079* at *11, 18 (training) (*citing* City of Canton, 489 U.S. at 389). *Notice* of a pattern of *similar* violations is required. Davis, 406 F.3d at 383 (emphasis in original) (*citing* Roberts, 397 F.3d at 294 (rejecting plaintiffs' proffered pattern where it required 'an excessively high level of generality'))"; Pickens, 2006 WL 3175079 at * 11 (*citing* Roberts, 397 F.3d at 294 (rejecting plaintiffs' proffered pattern where it required "an excessively high level of generality"); (*citing* Snyder, 142 F.3d at 798 ("[P]laintiff must demonstrate at least a pattern of similar incidents in which the citizens were injured.")); *see also* Burge, 336 F.3d at 371 (evidence "not sufficient to establish deliberate indifference or knowledge" that a constitutional violation "would be a highly likely consequence"); *cf* Bryan County, 520 U.S. at 412 (holding that a finding of supervisory liability for inadequate screening "must depend on a finding that this officer was highly likely to inflict the particular injury suffered by the plaintiff")). The prior acts "cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." Davis, 406 F.3d at 383.

21.     In addition to showing a pattern of similar violations, the plaintiffs must show that the inadequacies in supervision are "obvious and obviously likely to result in a constitutional violation." Pickens, 2006 WL 3175079 at * 18. Such inadequacies "must reflect a "deliberate' or 'conscious' choice to endanger constitutional rights." Pickens, 2006 WL 3175079 at *18 (*quoting* Davis, 406 F.3d at 381, 383 (internal quotations and citations omitted)).  Plaintiff has made none of the showings required to hold Defendants liable under Section 1983.

22.     Plaintiff also argues that Harris County breached its duty to provide Colson with adequate supervision, and that the grossly inadequate supervision was the proximate cause of

Plaintiff's injuries. Plaintiff then argues that Harris County manifested its indifference by tolerating misconduct by its deputies and by encouraging misconduct by failing to adequately supervise them. *See* DKT. NO. 17, page 7. The law and the facts which apply to this claim are set out in Defendants' Motion for Summary Judgment, and will not be repeated here. *See* DKT. NO. 14, pages 16-20. It is undisputed that the Sheriff's Office learned of the incident on October 6, 2003, and that Major Don McWilliams ordered an immediate investigation. The investigation was concluded on October 16, 2003, and Colson was suspended from peace officer status on October 17, 2003, thirteen days after the incident. Colson was terminated from the Sheriff's Office on November 21, 2003 as a result of his conduct on October 4, 2003. The Sheriff's Office presented the findings of the investigation to the Harris County District Attorney's Office Public Integrity Unit for possible charges to be filed. *See* DKT. NO. 14, page 19. The Sheriff's Office acted promptly and decisively in addressing this improper use of force by Colson. Plaintiff's alleged failure to supervise claim is simply an attempt to impose liability in *respondeat superior* where no such liability exists. There is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law.

### RESPONSE TO PLAINTIFF'S OBJECTIONS TO DEFENDANTS' AFFIDAVITS

23. Plaintiff objects to the affidavits of Commander Rodriguez, Major Don McWilliams and Captain Jay Coons on the ground of hearsay. Plaintiff has waived any objection he may have because he has failed to point out the specific testimony to which he refers. It is insufficient to simply allege that Defendants' affidavits "also contain hearsay". This Court should overrule Plaintiff's Objections to Defendants' affidavits.

**MOTION TO STRIKE**

24. In his Response, Plaintiff moves to strike Defendants' expert, Commander Albert Rodriguez. *See* DKT. NO. 17, page 14. Plaintiff alleges that Commander Rodriguez is not qualified to render an expert opinion under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579. 592-93 (1993).[3] Plaintiff's attempt to challenge Commander Rodriguez on Daubert grounds is untimely, and Defendants move to strike this challenge. The Order extending the time in which to file dispositive motions did not address the filing of all other motions in any way. As the Docket Control Order indicates this Motion was due on March 16, 2007. Subject to and without waiving its Motion to Strike, Defendants respond as follows.

25. Rule 702, Federal Rules of Evidence ("FRE") provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

26. In Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), the Supreme Court directed that district judges act as "gatekeepers" for all expert testimony by evaluating whether the offered testimony satisfies the requirements of FRE 702 and thus may be presented to the jury. Under the Court's gatekeeper role and Rule 702, the Court must exercise "some degree of regulation of the subjects and theories about which an expert may testify." Daubert at 589, 113 S.Ct. at 2795. "[T]he word 'knowledge' connotes more than subjective belief or unsupported speculation." Daubert at 590, 113 S.Ct. at 2795. The Supreme Court suggested four illustrative factors for determining the reliability of the expert's reasoning or methodology:

---

[3] Apparently mistakenly, Plaintiff refers to Commander Rodriguez, as "Gonzalez". Defendants have not designated an expert named Gonzalez, and assume Plaintiff refers to Commander Rodriguez..

(1) whether the theory or technique can be or has been tested; (2) whether it has been subject to peer review or publication; (3) its known or potential rate of error; and (4) whether the theory or technique is generally accepted in the relevant community. Daubert at 593-94, 113 S.Ct. at 2796-97. The Court cautioned that the inquiry is "a flexible one" and that the lower courts' focus "must be solely on principles and methodology, not on the conclusions that they generate." Daubert at 594-95, 113 S.Ct. at 2797.

27.     The Supreme Court has applied the trial court's gatekeeping role under Daubert applied to all kinds of expert testimony—not merely to scientific testimony. *See* Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). The Court then considered whether the four Daubert factors were to be considered in every Rule 702 reliability analysis and held that they could not be because "[t]oo much depends upon the particular circumstances of the particular case at issue." Kumho at 150, 119 S.Ct. at 1175. In so holding, the Court reasoned as follows:

> Engineering testimony rests upon scientific foundations, the reliability of which will be at issue in some cases. <u>In other cases, the relevant reliability concerns may focus upon personal knowledge or experience</u>. * * * Our emphasis on the word "may" thus reflects Daubert's description of the Rule 702 inquiry as "a flexible one." Daubert makes clear that the factors it mentions do *not* constitute a "definitive checklist or test." * * * We agree with the Solicitor General that "[t]he factors identified in Daubert may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony. The conclusion, in our view, is that we can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in Daubert, nor can we now do so for subsets of cases categorized by category of expert or by kind of evidence.
>
> \*     \*     \*
>
> Indeed, [the Daubert] factors do not all necessarily apply even in every instance in which the reliability of scientific testimony is challenged.

Kumho at 150, 119 S.Ct. at 1175 (italics by Court; underlining by author) (citations omitted). Not only is the lower court's decision on whether to admit or exclude expert testimony reviewed

for abuse of discretion, but "[t]hat standard applies as much to the trial court's decisions about how to determine reliability as to its ultimate conclusion." Kumho at 152, 119 S.Ct. at 1176.

28.   In determining the admissibility of expert testimony under the Federal Rules of Evidence, the Supreme Court has described FED. R. EVID. 402 as the "baseline" of the inquiry. *See* Daubert, Id., 509 U.S. at 597. That rule provides:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

*See* FED. R. EVID. 402. The rules have defined relevant evidence as well:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

*See* FED. R. EVID. 401. The requirement in FED. R. EVID. 702, "that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact issue," is simply a relevance requirement. *See* Daubert, Id., 509 U.S. at 591.

29.   Plaintiff claims generally that Defendant's expert, Commander Albert Rodriguez, is not qualified to render an expert opinion under Daubert. Plaintiff further claims generally that Commander Rodriguez's methodology has not been shown to be reliable, and that he has "almost no experience evaluating supervision in a detention setting." *See* DKT. NO. 17, page 14.

30.   Full gatekeeper hearings in this situation are not required. This is an ordinary case in which the reliability of Commander Rodriguez's methods can properly be taken for granted. Further, the reliability of Commander Rodriguez's methods has not been called sufficiently into question. *See* Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149-52 (1999).

31.   Attached hereto as *Exhibit "A"* and incorporated by reference for all purposes herein is a true and correct copy of Commander Rodriguez's curriculum vitae. Commander

Rodriguez has served in law enforcement for nearly thirty years. His entire service has been with the Texas Department of Public Safety ("DPS"), where he presently holds the rank of Commander and is the Director of Training for the DPS Training Academy. Commander Rodriguez holds a Masters, Instructor's, Advanced, Intermediate and Basic Certificate from the Texas Commission on Law Enforcement Officer Standards and Education ("TCLEOSE"). He is also a graduate of the Federal Bureau of Investigation National Academy and holds an FBI Instructor's Certificate. As *Exhibit "A"* indicates, Commander Rodriguez has received over 5,000 hours of law enforcement training throughout his career. Some of the courses he has taken which specifically address management and supervision in the law enforcement context include: Manager of Managers Program; High Performance Management Program; First Level Management Training; and Mastering Performance Leadership. Commander Rodriguez has taught use of force in jail settings in agencies throughout the state of Texas, in addition to the numerous other courses he has taught. Finally, as Commander and Director of Training for DPS, Commander Rodriguez supervises one captain, three lieutenants, seven sergeants 35 non-commissioned employees and all training activities at the Texas Department of Public Safety Training Academy. *See Exhibit "A"*. He thus has personal experience in supervision of the law enforcement officer. Commander Rodriguez's long and distinguished career in the law enforcement field makes him well qualified to render an expert opinion in this case.

32.     Plaintiff apparently complains that Commander Rodriguez has not specialized sufficiently in law enforcement cases involving detention settings. However, the principles involved in the use of force by a patrol deputy or a detention officer are the same, as are the basic principles involved in supervision of the individual patrol deputy and the individual detention officer. The Third Circuit has held that a lack of specialization does not affect the admissibility

of the expert opinion. *See* McCullock v. H.B. Fuller Co., 61 F. 3d 1038, 1042-43 (2nd Cir. 1995). Thus, Plaintiff does not have an adequate basis to exclude Commander Rodriguez as purportedly unqualified on the issue of supervision in a detention setting.

33. Attached as *Exhibit "B"* and incorporated by reference for all purposes herein is the Expert Report prepared by Commander Rodriguez and filed with the Court. *Exhibit "B"* sets out in specific detail the methodology Commander Rodriguez employed in reaching his opinions in this case. Specifically, Commander Rodriguez" inspected Cell Block E, Pod E-4; interviewed Lieutenant Taylor, and reviewed and researched a number of additional documents. At the time of his deposition, Commander Rodriguez had also reviewed additional materials from the Harris County Sheriff's Office Departmental Manual on supervision, and had personally interviewed Sgt. Lary Porter. *Exhibit "B"* explains the manner in which Commander Rodriguez reached his conclusions and opinions in this case. The methodology employed by Commander Rodriguez is that which is employed by experts in the law enforcement area, and is based on his background, skill and experience.

34. Commander Rodriguez is fully qualified to render an expert opinion in this case. Further, the methodology he employed in reaching his opinions and conclusions is that which would be used by any law enforcement expert and is reliable.

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request that their Motion for Summary Judgment be in all respects granted, and for such other and further relief which to this Court shall seem just and proper.

Respectfully submitted,

/S/ Mary E. Baker
MARY E. BAKER
Federal I.D. No. 7647
State Bar No. 08534000
Assistant County Attorney
1019 Congress, 15th Floor
Houston, Texas  77002
(713) 755-7166 (Telephone)
(713) 755-8924 (Fax)

OF COUNSEL:

MIKE STAFFORD
COUNTY ATTORNEY

ATTORNEY FOR DEFENDANTS
HARRIS COUNTY, TEXAS and
SHERIFF TOMMY THOMAS

### CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2007, a true and correct copy of **DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE PLAINTIFF'S PURPORTED DAUBERT MOTION** was served by electronic notice to Eric J. Davis, 1314 Texas Avenue, Suite 608, Houston, Texas  77002.

/S/ Mary E. Baker
MARY E. BAKER
Assistant County Attorney