# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

RODNEY KIBBLE,                          §
     Plaintiff,                    §
                                        §
v.                                      §          CIVIL ACTION NO. H-05-3376
                                        §
TOMMY THOMAS, *et al.*,                 §
     Defendants.                   §

## MEMORANDUM AND ORDER

Currently before the Court in this civil rights action is the Motion for Summary

Judgment [Doc. # 14] filed by Defendants Tommy Thomas and Harris County, Texas (the

"County").[1]  Plaintiff filed a response [Doc. # 17] and Defendants replied [Doc. # 18].

This matter is fully briefed and ripe for adjudication.  Upon consideration of the parties'

pleadings, the applicable law, and the summary judgment record, the Court concludes that

the Motion should be **granted.**

## I.    BACKGROUND

The following uncontested facts are drawn from Plaintiff's deposition and the

summary judgment record.  In October 2003, Plaintiff was a non-violent offender in

---

[1]     During the lengthy time this case has been pending, Plaintiff has not completed service on the
only other Defendant, Todd Colson, named in the Complaint.  Accordingly, Plaintiff's claims
against Colson are dismissed for failure to prosecute.

custody of the Harris County Sheriff's Office at the "Little Baker" jail facility.[2]  Kibble was housed in "E-4," part of "Pod E," one of the jail's administrative units.[3]  On October 4, 2003, Sergeant Lary Porter ordered and supervised a random search of E Pod.[4]  While officers searched the sleeping area, Kibble and the other inmates in E-4 were held downstairs in the dayroom.[5]  The officers searching the dayroom discovered a "shank," or improvised weapon, in one of the inmate lockers.[6]  Officers questioned the inmates, but did not learn who had made or hidden the weapon.  Sergeant Porter determined that there were no serious "racial or gang problems" among those inmates, then ordered all personnel to return to their normal duties to carry out an inmate count that was called at 3:00 p.m.[7]  He left the pod with the shank, which he secured in his office as contraband to be

---

[2]     There are two County jails on Baker Street; the County and its witnesses refer to the facility at issue as "Little Baker."  *See, e.g.,* Motion, at 18 n.4; Affidavit of Sergeant Lary Porter ("Porter Affidavit"), Motion, Exhibit A, at 1, ¶ 2.

[3]     The jail's residence areas are divided into "pods," each of which has several units.  Pod E-4 is divided into two floors.  Inmates have the use of a dayroom on the lower floor, and sleep in a "sleeping area" above the dayroom.  The sleeping area includes lockers and other storage.  *See* Porter Affidavit, at 2, ¶¶ 4-5.

[4]     Each pod is subject to a search conducted randomly once a month.  *See id.*, at 2, ¶ 4.

[5]     *See id.*, at 2-3, ¶ 6.

[6]     *Id.* at 3, ¶ 7.  "The shank was a four- to five-inch piece of wire, approximately a quarter of an inch in diameter.  It looked as though someone had taken this piece of wire and rubbed it on the concrete to sharpen a point on one end."  *Id.*

[7]     *Id.* at 3, ¶¶ 8-9.

destroyed.[8]  Sergeant Porter did not continue the search past 3:00, or authorize a further search or inquiry into the shank.[9]

After Sergeant Porter returned to his office, on the other side of the building from E-4,[10] Deputy Todd Colson and at least two other deputies conducted a further search of the pod.  Kibble asserted in his deposition that these deputies ordered all the inmates to strip naked and stand in a circle.[11]  The inmates were abused.  Kibble related that one inmate "was called out in the middle of the circle," where "he was assaulted, then told to get back in the circle."[12] Deputy Colson ordered Kibble and other inmates to keep one foot off the ground, and then to lower it and raise the other leg.[13]  Kibble allegedly became confused and raised the wrong leg, at which point Colson accused him of not following orders and kicked him.[14]  The kick allegedly injured Kibble's lower back and caused rectal bleeding.[15]  He also asserted that the blow drove his face into the wall, causing his nose

----

[8]       *Id.*

[9]       *See id.*, at 3-4, ¶ 9.

[10]      *See* Porter Affidavit, at 4, ¶ 10.

[11]      Deposition of Rodney Kibble ("Kibble Depo."), Response, Exhibit 1, at 48.

[12]      *Id.* at 82.

[13]      *Id.* at 83.

[14]      *Id.* at 83-84.

[15]      *Id.* at 84-85.

to bleed.[16]   Another inmate witnessed Colson kick Kibble, "slap Inmate George in the head with an open hand," and "kick inmate George in his leg."[17]   The inmates were then ordered to do pushups before being allowed to retrieve their clothing.[18]

One of the deputies present at this second search and interrogation brought the incident to his supervisor's attention, resulting in a detailed internal investigation.[19]   As for Plaintiff, Coons concluded that Colson "used force against inmate Kibble by kicking him in the leg."[20]   Coons characterized Colson's actions as "knowing, intentional, and

---

[16]   *Id.*

[17]   Affidavit of Anthony Ramos, Response, Exhibit 3, at 2.

[18]   *Id.*

[19]   The Incident Report is Captain Coons's memorandum detailing the results of that investigation.  *See* Major Incident Report ("Incident Report"), Attachment to Affidavit of Captain Jay Coons ("Coons Affidavit"), Motion, Exhibit B, at 4.  Investigating the sworn statements of the inmates and deputies who had witnessed the incident, Coons concluded that Deputy Colson exceeded his authority and used unjustified violence against the inmates.  *Id.* at 6.  Coons found that Colson ordered inmates to perform physical exercise as group punishment, in violation of regulations.  *Id.* at 4.  He also describes Colson's "actions in attempting to suborn perjury" on the part of a deputy who witnessed the attack.  *Id.* at 4. Coons found that Colson "ordered several inmates to engage in physical exercise as a form of group punishment," apparently by ordering them do pushups before they were allowed to put their clothes back on.  *Id.*  He also found that Colson "knowingly and intentionally assaulted inmate Joe Nathan Lewis . . . who was not physically resisting or attacking Deputy Colson, by striking inmate Lewis twice in the area of his face then pushing him in the back." *Id.* at 5.

[20]   Incident Report, at 6.

systematic; he used force for the sole purpose of inflicting injury and pain and it is this that makes this incident not only serious, but chilling."[21]

Based on Captain Coons's investigation and report, the Sheriff's Department terminated Colson's employment.[22]  The termination notice characterizes Colson's kicking of Kibble as "unwarranted physical abuse," and cited that use of force as well as a subsequent attempt to "coerce a witness" as "completely inconsistent with the Sheriff's Office [sic] expectations of its personnel."[23]  Colson was later convicted of two counts of "official oppression" arising from the events of October 4, 2003, and sentenced to 60 days' incarceration in the Harris County jail.[24]

Kibble filed suit pursuant to 42 U.S.C. § 1983 against Sheriff Tommy Thomas in his official capacity, Harris County, and Deputy Colson.[25]

---

[21]     *Id*. at 7.  The affidavits Coons relied on in his investigation, which he took from the inmates and deputies who witnessed the incident, are not on the record here.  The Court accordingly does not rely on Coons's description of those sworn statements for any part of its analysis.  The Court is mindful that only Colson's assault on Kibble is at issue in this case.

[22]     *See* Memorandum to Deputy Todd Colson ("Notice of Termination"), Attachment to Affidavit of Major Don McWilliams, Motion, Exhibit C.

[23]     *Id.* at 1-2.

[24]     *See* Judgments of Conviction of Todd Colson in Cause Nos. 974352, 974355, *State of Texas v. Todd J. Colson*, 182nd District Court, Harris County, Texas, Exhibits F and G to Motion.

[25]     Although the suit purports to be a class action, no motion for class certification has been filed.

## II.   LEGAL STANDARDS

### A.   Section 1983

Actions brought under § 1983 may be brought against public officials in either their official or personal capacities.  Official capacity suits are "'another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n.55 (1978)).  Official capacity suits are not suits against an official personally. *Kentucky*, 473 U.S. at 165 (1985) (quoting *Monell*, 436 U.S. at 690 n.55). Instead, official capacity suits are, in all respects other than name, to be treated as a suit against the governmental entity of which the official is an agent. *Id*.

Local governmental entities may be held liable under 42 U.S.C. § 1983 for policies that cause constitutional torts.  *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 468 (5th Cir. 1999) (citing *Monell,* 436 U.S. at 694).  This liability does not arise, however, merely because an employee of the municipality is responsible for the constitutional wrong; there is no "*respondeat superior* theory" under § 1983.  *Id*. at 471.  Instead, § 1983 liability  is created only when the wrong complained of is made pursuant to a "municipality's official policy."  *Id*.; *Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.,* 153 F.3d 211, 215-16 (5th Cir. 1998).   A municipality or local government may be held liable under § 1983 only for acts for which it is actually responsible. *Doe*, 153 F.3d at 215

(citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S. Ct. 1292, 89 L. Ed.2d

452 (1986); *Spann v. Tyler Indep. Sch. Dist.,* 876 F.2d 437, 438 (5th Cir. 1989)). More

specifically, "a municipality may be held liable under § 1983 when 'execution of a

government's policy or custom, whether made by its lawmakers or by those whose edicts

or acts may fairly be said to represent official policy, inflicts the injury.' *Id.* (quoting

*Monell,* 436 U.S. at 694, 98 S. Ct. 2018; 1B Schwartz & Kirklin, § 7.5 ("A municipality

is liable for its own wrongs when enforcement of a municipal policy or practice results in

a deprivation of federally protected rights.")). "Thus, § 1983 municipal liability may be

imposed when (1) the enforcement of a municipal policy or custom was (2) 'the moving

force' of the violation of federally protected rights." *Id*. (quoting 1B Schwartz & Kirklin,

*supra,* 7.6 (quoting *City of Canton v. Harris,* 489 U.S. 378, 385-91, 109 S. Ct. 1197, 103

L. Ed.2d 412 (1989))).   A plaintiff must also prove that the alleged constitutional or

statutory deprivation was intentional or due to deliberate indifference—not the result of

mere negligence.  *Farmer v. Brennan*, 511 U.S. 825, 828–29 (1994) (citing *Helling v.*

*McKinney*, 509 U.S. 25 (1993)).

### B.    <u>Summary Judgment</u>

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary

judgment, after adequate time for discovery and upon motion, against a party who fails to

make a sufficient showing of the existence of an element essential to the party's case, and

on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).   In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   FED. R. CIV. P.  56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).   The moving party, however, need not negate the elements of the non-movant's case.   *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).   The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact

for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"  *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party.  *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999).  In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

## III.  ANALYSIS

### A.  Claims Against Sheriff Thomas in his Official Capacity

As a preliminary matter, Defendants seek dismissal of Sheriff Thomas, who is sued in this action only in his official capacity.  A suit against the Sheriff in his official capacity is in fact a claim against the County.  *See Bennett v. Pippin*, 74 F.3d 578, 584 (5th Cir.

1996) (holding that a sheriff sued in his official capacity is not a proper defendant where the county has also been sued).  Because the County itself is the real party in interest, Thomas is an extraneous party and should be dismissed.  Kibble's claims will be analyzed as asserted solely against the County.

### B.    Policy, Practice, or Custom Theory

Kibble contends that the County's "established policies and/or customs . . . violated Plaintiff's clearly established rights under the United States Constitution to freedom from the use of unreasonable, unnecessary, and excessive force."[26]  The Complaint does not explicitly describe the alleged policies or customs, but in his response to the Motion, Kibble singles out "Harris County's practice of allowing cell searches without a supervisor being present," which he calls a "'policy or custom' so common and well settled as to

---

[26]    Complaint, at 8-9, ¶ 43.

constitute a custom that represents official policy."[27]  Cell searches were in fact carried out

without supervision.[28]

**Lack of Identification of the Precise Custom.**—The County's first response to

Kibble's asserted custom or practice is that, because he failed to identify the specific

custom in his Complaint, he may not do so now.[29]  Although Kibble's Complaint includes

only the general statement that unspecified "policies and/or customs" violated his Eighth

Amendment rights, the Court deems this allegation sufficient to satisfy federal notice

pleading standards, which require that a plaintiff make a "short and plain statement of the

---

[27]    Response, at 11 (citing *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)). Evidence in the summary judgment record reveals that the jail's written policies require that "[r]andom cell searches shall be conducted by Deputies under the direction of a floor supervisor."   Harris County Sheriff's Department 701 Post Orders ("Post Orders"), Response, Exhibit 6, at 49.  On the facts presented, this policy does not apply to the cell search at issue because that search was not a "random" search; it was provoked by the discovery of an illicit weapon during such a supervised, random search.  Kibble nevertheless apparently contends that  the County had a written policy that requires that *all* cell searches be supervised.  Such a policy is not evident in the record; according to the policies in evidence, non-random searches, even strip searches, may be carried out without the presence of a supervisor or even a second deputy, although "it is advisable to conduct the search in the presence of another Deputy."  *Id.* at 52.  Further, the record is unclear as to whether or not a "floor supervisor" was present, and the Court assumes *arguendo* that none was there.

[28]    The County's representative testified:

> A.  Should the supervisors be there?  I don't think so.  I made it a practice of being in 90 — better than 90 percent of mine.
> . . . .
> Q.  I understand.  But in terms of the policy and procedures, it's not required that a supervisor be present?
> A.  True.

Deposition of Sergeant Lary Porter, Response, Exhibit 4, at 24.

[29]    Reply, at 3.

claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a); *but see Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S.Ct. 1955, 1964-65 (May 21, 2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' [*sic*] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").[30]

**Lack of Constitutional Right.**—Substantively, the County argues that Kibble "cannot claim that he has a constitutional right to a supervised cell search, as no such constitutional right exists."[31] The cases cited in support of this assertion, however, do not reach as far as the County asserts. The authorities establish that a plaintiff must have suffered some constitutional injury in order to support a § 1983 complaint.[32] *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (nothing "authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm"); *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006) ("It is facially evident that [the test for § 1983 liability] cannot be met if there is no underlying constitutional violation."); *Saenz v. Heldenfels Bros., Inc.*, 183 F.3d 389, 392-93 (5th Cir. 1999) (municipality not liable for the actions of a police officer where the plaintiff "suffered no constitutional injury at the

---

[30]    Had the County raised this argument sooner, the Court would have required more specificity.

[31]    Reply, at 3.

[32]    *Id*. at 4.

hands of the individual police officer") (citing *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).  The constitutional injury Kibble alleges is not that the deputies engaged in an unsupervised cell search *per se*, but that Deputy Colson used unjustified violence against him in the course of that search.  He argues that the County's custom failed to prevent that harm.[33]  Kibble has adequately pled a constitutional harm.

**Lack of Causal Link.**—The County also argues that there is no causal link between a practice of allowing unsupervised cell searches and the alleged Eighth Amendment violation Kibble alleges.[34]  A municipality does not incur liability under § 1983 unless there exists "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *City of Canton*, 489 U.S. at 385.  Specifically, "the plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted."  *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997).  "This connection must be more than a mere 'but for' coupling between cause and effect."  *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992) (citing *City of Canton*, 489 U.S. at 387).[35]  Kibble has not articulated a theory of such a "direct causal

---

[33]    "Had Porter been present, Plaintiff's constitutional rights would not have been violated."  Response, at 11.

[34]    Reply, at 4.

[35]    In *Fraire*, the plaintiffs alleged that the City of Arlington "failed to implement policies and procedures pertaining to the utilization of deadly force by plain clothes officers, and that such failure deprived Fraire of his constitutional rights" when he was fatally shot by such an officer.

(continued...)

link" between the County's custom and his injuries. *See Canton*, 489 U.S. at 385. The summary judgment record does not conclusively establish even a "but for" connection, which would be insufficient under *Fraire*.

A plaintiff can show that a failure to prevent a constitutional harm was the moving force behind that harm where the policymaker knew of prior violations and knew that the policy he failed to adopt would likely prevent future violations. In "failure-to-train cases," for instance, "the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the 'moving force' behind the plaintiff's injury." *Bd. of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 407-08 (1997). Here, however, Kibble has presented no evidence that County policymakers were aware of any pattern of prior abuse in connection with cell searches by unsupervised deputies.[36] In *Brown*, the county was accused of hiring sheriff's deputies without carefully scrutinizing their backgrounds. The Supreme Court cautioned that a plaintiff must show factually some

---

[35] (...continued)
*Fraire*, 957 F.3d at 1272. The court of appeals upheld the district court's dismissal of the claims against the municipality because, among other reasons, plaintiffs failed to show any city policy "that could be construed to authorize an officer to use deadly force unnecessarily or unjustifiably." *Id.* at 1281.

[36] Indeed, it is unclear who Kibble contends is the County's policymaker in regard to the jail rules, policies, and/or customs.

basis for believing that the underlying harm is a "highly predictable" result of failing to take such a broad precaution, or "there is a particular danger that a municipality will be held liable for an injury not directly caused by a deliberate action attributable to the municipality itself." *Id*. at 409-410. The Court noted the difficulty in testing the causal link between the broad policy and the unforeseen harm. *Id*.[37] "The fact that inadequate scrutiny of an applicant's background would make a violation of rights more *likely* cannot alone give rise to an inference that a policymaker's failure to scrutinize the record of a particular applicant enabled a specific constitutional violation." *Id*. at 410-11 (emphasis original).

Kibble asserts that the County's failure to require supervision during deputies' searches of jail areas and possibly other deputy/prisoner encounters allowed the specific constitutional violation he suffered to occur.[38] Kibble's argument amounts to the proposition that the County's failure to require a sergeant's presence during a cell search was a "moving force" for potential harms caused to inmates by unsupervised deputies. The Court is not persuaded that Kibble asserts a sufficient causal linkage under *Brown*. Kibble seeks to hold the County liable for an alleged failure to adopt a broad prophylactic

---

[37]    The *Brown* court recognized that proving causality may be difficult in cases where the plaintiff's injury is caused by a defendant's omission because "the plaintiff can point to no other incident tending to make it more likely that the plaintiff's own injury flows from the municipality's action, rather than from some other intervening cause." *Id*. at 408-09.

[38]    Kibble argues that "[h]ad Porter been present, Plaintiff's constitutional rights would not have been violated." Response, at 11.

precaution against line officers' misconduct.  This theory runs afoul of the Supreme

Court's warning in *Brown* that municipalities should not "be held liable for an injury not

*directly* caused by a deliberate action attributable to the municipality itself."  *Id.* at 410

(emphasis added).  Kibble argues, for instance, that had the County not been in the

practice of allowing deputies to conduct unsupervised searches in contravention of its

written policy then a deputy present at the time of search and attack "would have known

that the search was unauthorized and could have stopped the violation of Defendant's

constitutional rights."[39]  At its core, Kibble's theory amounts to the argument that the

County's jail's custom was a "but for" cause of his injuries, a theory not sufficient to

support § 1983 liability.[40]  The County is therefore entitled to summary judgment as a

consequence of Kibble's failure to show a genuine fact issue that its custom was the

moving force behind his injuries.

**Absence of Proof of Deliberate Indifference.**—Even if the issue of causation

were not dispositive, the County would be entitled to a judgment because Kibble has not

---

[39]    Response, at 12.  This theory is somewhat contravened by the uncontroverted evidence.
First, it assumes the cell search in issue violated the policy against unsupervised *random* cell
searches, which seems inapplicable.  Second, Cortney Atkinson, a deputy present with
Colson, actually testified that he *did* know that the deputies' search was improper, even
though he did not know that, according to the jail's written policy, a sergeant should have
been present if the search was deemed a "random cell search."  Atkinson failed to stop the
beating despite his knowledge that it was improper.  *See* Deposition of Cortney Atkinson
("Atkinson Deposition"), Response, Exhibit 5, at 33-34.

[40]    *See Fraire*, 957 F.2d at 1281.  Kibble has not presented evidence that would show more
direct causation, such as testimony from Deputy Colson or an expert that Colson attacked
Kibble *because* Colson was unsupervised.

raised a genuine fact issue that the County acted with "deliberate indifference."  Kibble

"must demonstrate that a municipal decision reflects deliberate indifference to the risk that

a violation of a particular constitutional or statutory right will follow the decision." *Brown*,

520 U.S. at 411.  "The plaintiff must generally demonstrate at least a pattern of similar

violations." *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001); *Burge*, 336

F.3d at 370; *Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force*, 379

F.3d 293, 309 (5th Cir. 2004).  Kibble makes no attempt to show a pattern of prior

violations.  Rather, he relies on an exception that allows a plaintiff to show deliberate

indifference by "showing a single incident with proof of the possibility of recurring

situations that present an obvious potential for violation of constitutional rights and the

need for [a prophylactic policy]." *McClendon v. City of Columbia*, 258 F.3d 432, 442

(5th Cir. 2001); *see also Burge*, 336 F.3d at 373.  The single-incident exception is

"narrow," however, and it is a doctrine that the court of appeals has "been reluctant to

expand." *Burge*, 336 F.3d at 373 (citing *Pineda*, 291 F.3d at 334-35).  The exception

applies "only where the facts giving rise to the violation are such that it should have been

apparent to the policymaker that a constitutional violation was the highly predictable

consequence of a particular policy or failure to train." *Id*. (citing *Bryan County*, 219 F.3d

at 461).  There is no indication, nor does Kibble argue, that physical abuse of the sort he

suffered was a highly predictable consequence of officers failing to supervise deputies during cell searches.

Kibble does argue that in this specific instance Sergeant Porter should have known not to leave the deputies unsupervised, and thus Kibble's injuries were predictable. Kibble points to evidence that one of the deputies (not Deputy Colson) told another inmate, in response to that inmate's "wise comment," "[t]hat's alright, I got something for you."[41] The cited testimony is hearsay, but even if the Court were to receive it in evidence, it is not relevant. According to Porter's uncontroverted statement, he left the pod and ordered the deputies to return to their duties.[42] Porter testified, again without contradiction, that he was unaware that the deputies returned to the pod to perform another search. There is no *respondeat superior* liability for § 1983 violations, *see Burge*, 187 F.3d at 471, thus Porter and the County cannot be held liable for Porter's failure in that single instance to supervise a search that took place without his knowledge.[43] Kibble has not raised a genuine fact issue that the County acted with deliberate indifference to his constitutional rights.

**Conclusion on Custom, Policy, and Practice Theory.**—The County's custom of not requiring supervision of deputies' cell searches was not a direct cause or moving force

---

[41]     Response, at 12 (citing Ramos Deposition, at 3).

[42]     *See* Porter Affidavit, at 3, ¶¶ 8-9.

[43]     As for the policy as a whole, as noted, there is no indication that Kibble's injuries were "highly predictable."  *Burge*, 336 F.3d at 373.

behind Kibble's constitutional injury.  It is possible that injury might not have occurred if supervision were present during the search, but there is no evidence or argument in the record that shows that the County's custom actually *caused* the harm alleged.  Kibble also fails to raise a genuine question of material fact that the County acted with deliberate indifference to his right to be free from a Fourth or Eighth Amendment violation.  Because there is no material issue of genuine fact on these dispositive issues, the County is entitled to summary judgment on Kibble's custom, practice, or policy theory.

### C.   Failure to Supervise Theory

Kibble asserts in the prefatory language in his complaint that the County "breached its duty to provide Deputy Todd Colson with adequate supervision," and that this "grossly inadequate supervision was the proximate cause of Plaintiff's injuries."[44]  This cause of action may only proceed within the above-described strictures of § 1983.  The analysis of Kibble's failure to supervise claim closely tracks that of Plaintiff's custom, policy, or practice theory.  Kibble "must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."  *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 n.25 (5th Cir. 2005) (citing *Smith v. Brenoettsy*, 158

---

[44]    Complaint, at 5, ¶ 20.

F.3d 908, 911-12 (5th Cir. 1998)).  The Court assumes, *arguendo*, that Kibble has met the first element: deputies performed unsupervised cell searches, despite a County policy to the contrary.[45]  The County could have, but did not, require supervision in practice for all such searches.

Kibble has not, however, shown a causal link between the County's failure to supervise deputies and the harm he suffered.  Just as Kibble failed to demonstrate that the County's custom of allowing unsupervised searches was the moving force behind his injuries, the evidence does not demonstrate a legally sufficient causal link between those injuries and the County's failure to train deputies not to perform unsupervised searches.  As with the custom or practice theory, the failure to train must be the "moving force" behind the constitutional violation.  *Johnson*, 379 F.3d at 310 (citing *Fraire*, 957 F.2d at 1281).  Mere "but for" causation is insufficient.  *See id*.  Kibble has not presented any argument that the County's failure to supervise was the moving force behind Colson's actions, such as testimony that Colson abused Kibble *because* he was unsupervised.  Kibble has merely established a question of fact that Colson would not have attacked him but for Porter's absence, which is insufficient as proof of causation.

Even if Kibble had shown causation, he must also show deliberate indifference as an element of a failure to supervise claim.  *See Estate of Davis*, 406 F.3d at 381 n.25.

_____

[45]   *See* Atkinson Deposition, at 29; Post Orders, at 49.

Deliberate indifference under a failure to supervise claim also requires a pattern of violations to put the County on notice of potential harm to inmates. *See id.*, at 383.  There is no such pattern alleged or shown here.  Nor may Kibble invoke the single-incident exception, as there is no showing that his injuries were the "highly predictable" consequence of failing to supervise deputies during cell searches, which are performed on a monthly basis at a minimum. *Burge*, 336 F.3d at 373.  There is therefore no genuine issue of material fact to be determined by a jury on Kibble's failure to supervise claim, and summary judgment is appropriate.

### D.    Objections to Evidence

Kibble objects to the County's submission of "defective affidavits."  Specifically, he argues that the affidavit of Albert Rodriguez, Commander of the Training Department of the Texas Department of Public Safety, contains hearsay, and that Rodriguez is not qualified to render the expert opinion for which his affidavit is offered.[46]  The County argues that Kibble's objections are unfounded and untimely.[47]  Because the Court has not relied on the Rodriguez Affidavit in its analysis of the Motion, it declines to rule on Kibble's objections.

---

[46]    *See* Response, at 14 (citing Affidavit of Commander Albert Rodriguez ("Rodriguez Affidavit"), Motion, Exhibit E).

[47]    *See* Reply, at 10.

IV.   **CONCLUSION**

The uncontroverted facts of this case describe a deplorable incident that should not have occurred.  Colson's and other deputies' arbitrary and unprovoked attack on Kibble was unjustified and unconscionable.  Kibble asserts his claims against the County, though, not Colson or other deputies individually.  The extent of the County's liability is governed and limited by 42 U.S.C. § 1983, as interpreted by the United States Supreme Court and the Fifth Circuit Court of Appeals.  Under these authorities, Kibble has not shown that the County's actions caused or were the moving force behind his injuries, or that the County was deliberately indifferent to the risk that he would be assaulted.  It is therefore

**ORDERED** that Defendant Tommy Thompson in his official capacity is **DISMISSED** from this action as his participation is duplicative of Defendant Harris County.  It is further

**ORDERED** that Plaintiff's claims against Defendant Todd Colson are **DISMISSED** for failure to prosecute.  It is further

**ORDERED** that the Motion for Summary Judgment filed by Defendant Harris County [Doc. # 14] is **GRANTED**.  The Court will issue a separate final judgment.

SIGNED at Houston, Texas, this **12**th day of **June, 2007**.

Nancy F. Atlas
United States District Judge